## AT CHAMBERS.—SEPTEMBER, 1855.

## IN THE MATTER OF HENRY L. CAMBRIDGE.

The Court may grant a writ of *habeas corpus* to a party confined upon process in a civil suit.

The court, on *habeas corpus*, will go behind the process of arrest and detention issued against the defendant in a civil suit, and inquire into the truth and sufficiency of the plaintiff's allegations, allowing the defendant to controvert those allegations.

The plaintiff will not be liable on his bond if he proved that the defendant is indebted to him, although he does not prove that defendant is endeavoring fraudulently to evade the payment of the debt.

JUSTICE ROBERTSON delivered his decision as follows:

By the return of the Deputy Marshal to the writ of *habeas corpus*, it appears that Cambridge is held in custody under a process issued out of this court, at the suit of John Montgomery, under the Act of 1852, which provides for the arrest of fraudulent debtors, and debtors about to abscond.

The first important point raised by the learned counsel for the

plaintiff in the suit is that, Cambridge being imprisoned on civil process, and not on any criminal charge, is not entitled to the benefit of this writ.

We must differ from the counsel on this point. It is not only provided by the Constitution of this kingdom, that no person shall be imprisoned except upon due process of law, but effectual provision is made against the continuance of *all* unlawful restraint or imprisonment, by the privilege of the writ of *habeas corpus* being secured to every person within his Majesty's jurisdiction.

"Every restraint upon a man's liberty, (says Chanceller Kent) is, in the eye of the law an imprisonment, wherever may be the place, or whatever may be the manner in which the restraint is effected. Whenever any person is detained with or without the process of law, unless for treason or felony, plainly and specially expressed in the warrant of commitment, or unless such person be a convict, or legally charged in execution, he is entitled to his writ of *habeas corpus*." Kent's Commentaries, vol. 1, p. 631. See also Bacon's Abridgement, vol. 4, p 563.

Says Sir William Blackstone, " But the great and efficacious writ, in *all manner of illegal confinement,* is that of *habeas corpus ad subjiciendum;* directed to the person detaining another, and commanding him to produce the body of the prisoner, with the day and cause of his caption and detention, *ad faciendum, subjiciendum et recipiendum,* to do, submit to, and receive whatsoever the judge or court awarding such writ shall consider in that behalf." Blackstone's Commentaries, vol. 3, p. 122.

That, at common law, Cambridge would be entitled (at least under the discretion of the court,) to his writ of *habeas corpus,* we think there can be no question. The Statute 31, Charles 2, chap. 2, restored the writ of *habeas corpus* to all its efficacy at common law, in cases to which that statute applied, but it was confined to commitments on criminal charges, leaving *all other* cases of unjust imprisonment to the *habeas corpus* at common law. See Blackstone's Com., vol. 3, page 128.

But the counsel for the plaintiff contends further, that the Deputy Marshal having made his return, the sufficiency of which is not controverted, showing that Cambridge is detained under a lawful process, issued pursuant to the statute of 1852, upon the plaintiff's sworn petition, which alleges that the " defendant seeks to evade payment of said debt by secreting his property, and by transferring the same to third parties, and being about to quit this kingdom," this court has no power to look behind this return and to inquire into the truth of these allegations of the plaintiff's petition, (on *habeas corpus*) even where they are met by the affidavit of the defendant, to the effect that they are altogether without foundation.

In reply to this objection, the learned counsel for the defendant cites Section 19, page 58, vol. 2, of the Statute Laws, which reads as follows, viz : " The Chief Justice and the Associate Justices of the Superior Court shall severally have powers at chambers upon any sworn application made in writing, to issue writs of *habeas corpus* for inquiring into the cause of alleged imprisonment, or *ad testificandum,* and may enlarge on bail persons rightfully confined, except in cases punishable by death." The counsel also refers to the proceed-

ings in the matter of Floyd Baker, in this court, before Chief Justice Lee, in which the plaintiff was permitted by the court to file affidavits in support of his allegations of fraud against the defendant, and such affidavits not appearing satisfactory to the court, the defendant was discharged on *habeas corpus.*

The statutes of this kingdom contain no further provision on this important subject, than that comprised in the general power given to the justices of this court in the section cited above, to issue writs of *habeas corpus* for inquiring *into the cause* of alleged imprisonment. But, we think that, although this power is contained in very few words, and although the mode of its practical application is not particularly prescribed, a fair and reasonable construction of the language will give to us the same powers conferred upon the justices in England, by the 56 George 3, chap. 100, and on the justices of the superior courts of many of the states of the United States, by their respective statutes. If we have the power to issue writs of *habeas corpus* to inquire into the cause of the imprisonment, it will not be denied, we think, that that power also implies and includes the power to do whatever justice may seem to require in the premises, after we have finished our inquiry. If this is not so, then our power to issue writs of *habeas corpus* is but a solemn farce, and no protection whatever to the liberties of the subject. If we can do nothing farther than simply *inquire* into the cause of imprisonment or detention, then we cannot discharge a party from durance, even if it plainly appears to us that no legal cause whatever is shown for his imprisonment. What is the cause of the imprisonment of Cambridge ? It is that, according to the allegations in the plaintiff's petition, he has been guilty of secreting his property, or fraudulently transferring it to third parties, or endeavoring to quit the kingdom with intent to evade the payment of the plaintiff's demand. These allegations are met by the oath of the defendant denying their truth, and will it be said that the defendant shall, in no case, be allowed to controvert the allegations of the plaintiff, however false and unfounded they may be in fact ? We believe that such is not the law at the present day, either in England or any part of the United States. In *exparte,* Beeching *et als.,* (4 Barn. & Cress., p. 136,) in the court of King's Bench, the prisoners had been arrested and detained under certain statutes, on a charge of smuggling, a matter cognizable upon information in the court of Exchequer, and not regarded as a criminal proceeding. Upon the return to the writ of *habeas corpus* it was contended, that the return showing a lawful commitment under the statute was sufficient. But Lord Chief Justice Abbott decided that the prisoners not having been committed for a criminal matter, the writ of *habeas corpus* in their case, issued not under the 31 Charles 2, chap. 2, but by virtue of the common law, and that the prisoners had therefore a right under the 56 George 3, chap. 100, to controvert the truth of the return. Affidavits on both sides were then read and merits discussed, after which the prisoners were remanded. (See also Nash's case, 4 Barn. & Ald., p. 295 )

The learned counsel for the plaintiff urges upon us that if the court should go behind the return, which shows that the defendant has been duly committed under the provisions of the Act of 1852, and discharge the defendant from custody, we arrogate to ourself the whole power

Y

of the legislature, and set aside what that body has, in this instance, declared to be the law of the land.   We are unable to perceive the force of this argument, for we cannot see how our proceedings upon a writ of *habeas corpus*, are to be governed or regulated in the least by the Act of 1852.   That act gives to a creditor, plaintiff, the right to sue out a warrant of arrest and detention against his *fraudulent* debtor, but the Constitution and the statute above referred to, secure to every man deprived of his personal liberty, the right to be set free whenever it shall appear that his imprisonment is wrongful.   And who is to be the judge of this matter—the court, or each individual creditor for himself?   If the court be the judge, shall it enforce the rights of the creditor only, without regard to the rights of the debtor? The argument of the learned counsel, it seems to us, if it proves anything, proves too much.   It exalts the statute of 1852 to be a law paramount to the Constitution.   For, if the court, cannot inquire into the truth of the alleged cause of imprisonment because a party has been committed under the provisions of that particular statute, here is a virtual abrogation of the sacred privilege belonging to every man, to have the cause of his detention examined into upon a writ of *habeas corpus,* and our first duty would seem to be in that case, to declare that statute a nullity, as being a clear infringement upon the rights of the subject, for the Constitution declares that the privilege of the writ of *habeas corpus* can only be suspended by proclamation of the King, in case of rebellion or invasion.

The learned counsel suggests that the defendant's proper remedy is upon the bond given by the plaintiff at the issuing of the process of arrest.   It is true that, if the plaintiff should not prove that the defendant is indebted to him, as alleged in his petition, the defendant would then have his remedy on the bond; but the plaintiff is not required to prove at the trial that the defendant *was endeavoring to evade the payment of the debt by fraudulent means.*   The plaintiff having simply proved his debt, his bond becomes void, and where then is the defendant's remedy upon it for his imprisonment, however wrongful it may have been in fact.

It will hardly be denied, we think, that unless the allegations of fraud contained in the plaintiff's petition are true, and are capable of being shown to be so to the court, when controverted by the positive oath of the defendant, then, the defendant's imprisonment is wrong.   Imprisonment for debt merely, apart from actual fraud, has no place in the laws of this kingdom.   We feel satisfied that any other view of the case than that we have taken, would pervert the statute of 1852, from the useful purpose for which it was intended, and render it a convenient engine of unmitigated oppression, not to be used by the court, but by every man against his neighbor.

The court granted leave to the plaintiff to introduce evidence in support of the allegations of fraud in his petition.

Mr. Blair for the plaintiff.

Mr. Bates, counsel for Cambridge.